IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JORGE W. VARGAS, ET AL.,

Plaintiffs,

v.

PEDRO TOLEDO DAVILA, ET AL.,

Defendants.

CIVIL NO. 08-1527 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Above plaintiffs Jorge W. Vargas, Tetelo Vargas, David Sepúlveda and Alicia Vargas (hereafter "plaintiffs") filed a Complaint against defendants for violations of their civil rights under Title 42, United States Code, Sections 1983, and under supplemental jurisdiction which stem from some illegal and unjustified interventions, search and seizures, deprivation of liberty and property and due process violations for the fabrication of criminal charges which led to plaintiffs' false arrest and incarceration.

Plaintiffs filed a fifteen-counts complaint narrating with specificity the constitutional violations incurred by co-defendants at the time of intervening with them and their property when state law enforcement officers assigned to the Mayaguez Region, including the town of Lajas, Puerto Rico, engaged in illegal, unjustified intervention, improper search and seizure and fabrication of criminal charges which led to plaintiffs' false arrest and illegal incarceration. Defendant Pedro Toledo (hereafter "Toledo") was at the time the Puerto Rico Police Superintendent of the Commonwealth of Puerto Rico, who is claimed with reckless

Jorge M. Vargas et al., v. Pedro Toledo Davila, et al
Civil No. 08-1527 (CVR)
Opinion and Order
Page No. 2

_____

indifference and/or reckless indifference or gross negligence in adequately training, supervising and disciplining the co-defendants Puerto Rico Police Officers ascribed to the Mayaguez Police District.  Co-defendants Juan Ortíz-Pérez (hereafter "Ortíz-Pérez") and Randy Bayrón-López (hereafter "Bayrón-López") were state Police agents ascribed to the Intelligence Division of Illegal Weapons of the Puerto Rico Police, assigned to the Mayaguez District, who participated in the violation of plaintiffs' constitutional rights. Co-defendants Bayrón-López and Ortíz-Pérez intervened at the scene at the residence of plaintiff Tetelo Vargas with a seemly search warrant.  Plaintiff Tetelo Vargas had to open a security box inside his home and, even though he displayed to the officers appropriate hunting license, target shooting license and registered weapons, the co-defendants searched the home and seized the legal weapons.  Upon arrival of plaintiff Sepúlveda, these two co-defendants also detained him on allegations of illegal weapons violation, even though he had two legal weapons consisting of two hunting shotguns that he was forced to get from the house next door where he lived.  No search warrant was shown or available for said property.  Plaintiff Sepúlveda avers he was assaulted and then placed under arrest.  These plaintiffs further allege co-defendants, after placing both of them under arrest, were taken to plaintiff Jorge Vargas' residence which was also being searched and seized, although he held up-to-date licenses for the weapons.  Upon their arrest, plaintiffs were paraded in front of a bar where several persons and family known to them were present.  Subsequently, they were taken in handcuffs to the Police Headquarters where news reporters had been called so that the incident of their arrest be viewed by the public at TV news programs and newspapers.  All

the intentional, malicious and illegal charges filed against plaintiffs at the state level were dismissed. However, the property illegally seized has not been returned to its lawful owners. *(Amended Complaint, Docket No. 38-2)*.

Co-defendants Toledo, Ortíz-Pérez and Bayrón-López filed a Motion for Partial Summary Judgment with the corresponding memorandum of law and statement of undisputed material facts. Co-defendants are requesting partial summary judgment so as to dismiss certain causes of action of the Amended Complaint for not being recognized as constitutional violations, to wit, privacy rights under the Fourth Amendment; search and seizure violations when there has been a probable cause determination; malicious/false arrests that should instead be considered a state torts; due process violations whose relief may be object of administrative proceedings, and since plaintiffs Sepúlveda and Vargas received summons to appear the next day before the Illegal Firearms Division, no false arrest may be claimed because their liberty was not restrained beyond that point. (*Docket No. 56*).

Sometime thereafter, defendants filed a Supplemental Motion for Summary Judgment adding as grounds the lack of specificity as to what articles of the Constitution of the Commonwealth of Puerto Rico were referred to in the Complaint filed by plaintiffs. (*Docket No. 68*). Said supplemental motion, which raises additional grounds, will be disposed by separate opinion and order.

Jorge M. Vargas et al., v. Pedro Toledo Davila, et al
Civil No. 08-1527 (CVR)
Opinion and Order
Page No. 4

_____

Plaintiffs filed their opposition, with the memorandum and statement of disputed facts. The parties have consented to jurisdiction by this Magistrate Judge for all further proceedings.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. Id. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id.

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23

F.3d 576, 581 (1st Cir. 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).

## LEGAL ANALYSIS

Co-defendants are requesting partial summary judgment of plaintiffs' claims insofar the claim by plaintiff Sepúlveda, that he was not read his Miranda rights, even though no incriminating statement is at issue, does not entail a violation of constitutional rights under Section 1983. A review of the Amended Complaint shows that, although co-plaintiff Sepúlveda narrates the event, there is no separate cause of action claimed for not having read to him the Miranda rights. In fact, there is no cause for relief filed by this or any particular plaintiff for not having been provided with their Miranda warnings. As such, we do not delve on this matter any further. *(Amended Complaint, ¶26, Docket No. 38-2).*

Co-defendants also request summary judgment as to Toledo in that he had no personal knowledge of the events alleged in the complaint nor received information or any written report of improper conduct by any of the agents, since such information would have been received by a different office, the Auxiliary Superintendency of Drugs and Firearms. Also, any administrative complaints as to these agents would have involved another

division, the Associate Superintendent or the Auxiliary Superintendent and not defendant Toledo, denying any affirmative link between the acts of the subordinate agents and co-defendant Toledo, as the Chief of the Puerto Rico Police in the Commonwealth of Puerto Rico.

Co-defendants also aver the allegations as to violations of plaintiffs' Fourteenth Amendment rights failed to identify which constitutional rights were violated and the procedural or substantive due process rights which were infringed.  As to procedural due process, since plaintiffs still had some post-deprivation proceedings in regards to the weapons which were seized, there is no actionable civil rights claim but rather they should have followed the available administrative procedure for return of said property, which co-defendants recognize is still being held at the Weaponry Deposit of the Police Headquarters.

As to substantive due process violation, co-defendants submit the acts alleged are not those that would shock the conscience to allow liability, but rather acts which may well fall under negligence, not unconstitutional violations.  As such, co-defendants aver that plaintiffs' substantive due process claim is unavailable.

Similarly, these co-defendants argue that plaintiffs' right to privacy is not one encompassed within the concept of liberty nor is it recognized by the Court of Appeals for the First Circuit under the Fourteenth Amendment and that malicious prosecution/false arrest is not considered as a substantive due process right since, in the presence of some arrest warrant, the probable cause determination was issued by a competent court and if anything plaintiffs should avail themselves of the adequate remedy for malicious

prosecution/false arrest under the tort laws of Puerto Rico not under federal law. We shall now discuss. On the same vein, co-defendant Ortíz-Pérez submits he had probable cause to obtain the search warrant, he only submitted the criminal investigation but it was the state prosecutor who authorized the charges and plaintiffs' allegations as to invasion of privacy and liberty (when paraded before the news media upon being arrested) are not encompassed as a Fourth Amendment violation.

### A. Defendants' Uncontested Material Facts.[1]

1. Co-defendant Ortíz-Pérez obtained the search warrant for the house of plaintiff Tetelo Vargas. He does not know the person who provided the confidential complaint (tip) that was assigned to him by the supervisor regarding weapons being kept by an individual. *Defts' Uncontested ¶¶ 1-3; Exhibit 1, Ortíz-Pérez' depo. pp. 31-32.*

2. Co-defendant Ortíz-Pérez went to the area upon being assigned the complaint. He does not know were plaintiff Jorge Vargas lives. The nickname of "Chapu" appearing on the search warrant was provided by Sergeant Figueroa Andújar. *Id., ¶¶ 4-6.*

3. Co-defendant Ortíz-Pérez stated under oath that he saw from a distance a person taking a dark color rifle out of a carry-on and understood the weapon he saw was a rifle. *Defts' Uncontested, ¶ 7-8, Exhibit 2, Ortiz-Pérez' depo.*

4. Co-defendant Ortíz-Pérez took over the investigation with his observations to a state prosecutor who determined a search warrant from the court could be obtained. He

---

[1] Although exhibits to support the contentions were submitted in the Spanish language, the statement of uncontested facts merely summarized and at times left out certain portions of the document in support, for which the interpretations of facts submitted are not always consonant with the document.

testified before a magistrate and submitted a sworn statement in support of the search warrant. *Exhibit 1, Ortiz-Pérez' depo. p.62; Exhibit 4, Ortiz Perez' sworn statement.*

   5. Co-defendant Ortíz-Pérez was present together with Agent Bayrón-López during the execution of the search warrant. *Defts' Uncontested ¶ 13-14; Exhibit 1, Ortíz-Pérez' depo. pp. 65-66.*

   6. Co-defendant Ortíz-Perez does not know the identity of the persons before whom plaintiff Alicia Vargas claims she had to undress and shower. *Defts' Uncontested ¶ 15; Exhibit 1, p. 77.*

   7. Co-defendant Ortíz-Pérez provided Miranda warnings to plaintiff Sepúlveda the night of the arrest at the Illegal Weapons Division. *Defts' Uncontested ¶16, Exhibit 1, pp. 79-80.*

   8. Co-defendant Ortíz-Pérez was cruising in a separate van and was not present at the house of Jorge Vargas nor when they stopped at the house of Peter Vargas. *Id., pp. 92-93.*

   9. Co-defendant Ortíz-Pérez gave plaintiff David Sepúlveda a summon to appear at the police station.  Sepúlveda did not provide any statement to any officer while under arrest inside the van. *Defts' Uncontested ¶¶36, Exhibit 7; ¶37, Exhibit 8.*

   10. Co-defendant Bayrón-López submits the criminal investigation regarding plaintiffs was performed by co-defendant Ortíz-Pérez and he participated only the day of the intervention upon instructions from Sergeant Figueroa. *Defts' Uncontested ¶19; Exhibit 5, Bayrón-López' depo., p. 15.*

11.  Prior to executing the search warrant, Bayrón-López verified that the search warrant was stamped by a judge and it had not expired.  *Defts' Uncontested ¶23; Exhibit 5, pp. 16-17.*

12.  Co-defendant Bayrón-López does not know who was the person who initially filed the criminal complaint, who had called the press/media.  He only went to execute a search warrant pursuant to a Court order.  *Defts' Uncontested ¶¶ 24-27; Exhibit 5, pp. 15-18, 20, 23.*

13.  Co-defendant Bayrón-López does not know the identity of the person before whom plaintiff Alicia Vargas claims she had to undress and shower.  *Defts' Uncontested ¶28; Exhibit 5, pp. 25-26.*

14.  Co-defendant Bayrón-López's participation was limited to an intervention with plaintiff Tetelo Vargas.  *Defts' Uncontested ¶29; Exhibit 5, p. 31.*

15.  The confiscated weapons in this case are in the Weaponry Deposit of the Police Headquarters.  *Defts' Uncontested ¶30, Exhibit 5, p. 37.*

16.  Co-defendant Toledo states having no personal knowledge of the events in the complaint.  *Defts' Uncontested ¶31, Exhibit 6, Toledo's depo. p. 8.*

17.  Co-defendant Toledo states he received no information or written report as to improper conduct of an agent, which would have been received by the Auxiliary Superintendency of Drugs and Firearms and discussed only therein.  *Defts' Uncontested ¶¶32-33; Exhibit 6, pp. 12-14.*

Jorge M. Vargas et al., v. Pedro Toledo Davila, et al
Civil No. 08-1527 (CVR)
Opinion and Order
Page No. 10

18.  Administrative complaints against police officers are delegated to the Associate Superintendent and an Auxiliary Superintendent.  The Associated Superintendent was Ramón Ortega to whom Toledo delegated the function of investigating, reviewing and deciding on administrative complaints against police officers. *Defts' Uncontested ¶ 34-35, Exhibit 6, pp. 48,* 88.

19.  Co-plaintiff Jorge Vargas could only identify agent Barbosa as one of the agents who searched his house.  He was told to remain silent and did so and was told he had the right to an attorney. *Defts' Uncontested ¶¶38-39, Exhibit 9, Vargas' depo., pp. 30, 69,* 70.

20.  Co-plaintiff Alicia Vargas was told by an unidentified police officer he had to go to the Mayaguez Division.  She told the unidentified officer she first needed to change her clothes and take a bath. *Defts' Uncontested ¶¶41-42, Exhibit 10, p. 29.*

21.  Co-plaintiff Alicia Vargas was told by an unidentified police officer she could not close the bathroom door while she took a bath. *Defts' Uncontested ¶43, Exhibit 10, p. 30.*

22.  Co-plaintiff Tetelo Vargas was given a summons to appear to the office of the Police Division the day following the arrest. *Defts' Uncontested ¶44, Exhibit 11, Tetelo Vargas' depo., p. 137; Exhibit 12, summons.*

23.  A videotape from WORA-TV, Channel 5, was broadcasted and it was regarding the arrest of some individuals, among them were Jorge Vargas and Tetelo Vargas. The news clip shows Sergeant Figueroa Andújar giving a press conference inside the police station and several handcuffed individuals seating in a bench. *Defts' Undisputed, ¶¶45, 46, Exhibit 13, sworn statement Jorge J. Marxuach.*

Co-defendants also submit portions of the deposition testimonies of some of the plaintiffs as uncontested statement of material fact in support of their request for partial summary judgment.

**B. Plaintiffs' Uncontested Material Facts.**

1- Plaintiff Tetelo Vargas denies the undisputed facts submitted by defendants. Plaintiff Tetelo Vargas submits that, at the time of the events, co-defendant Ortíz-Pérez knew that he (Tetelo Vargas) was a correctional officer at the Ponce State Correctional Facility, that he was legally licensed to use a weapon provided by his employer and was the legal owner of two motor vehicles.  On the date of June 5, 2007, Co-defendant Ortíz-Pérez also knew Tetelo Vargas' legal status as a weapons owner, that he possessed a license to hunt and shoot in the range and he legally owned several shotguns which were duly registered.  *Plaintiffs' Uncontested ¶¶3-9, Exhibit 2, Tetelo Vargas' depo.*

2- The sworn statement submitted by Co-defendant Ortíz-Pérez in support of the search warrant for the home of Tetelo Vargas and/or David "Chapu" Sepúlveda refers to a rifle but in his deposition he admits that at a distance he could not see the difference between the rifle and the shotgun as to structure since, although these are very similar, one would use bullets and the other one cartridges. *Plaintiffs' Undisputed ¶11, Exhibit 2; Ortíz-Pérez' depo, pp. 42, 54, 59, 60.*

**1. Privacy Rights as a Constitutional Violation.**

Defendants submit no privacy right can be claimed by plaintiffs as a constitutional violation under the substantive part of the Fourteenth Amendment, unless it involves some

search related to some bodily integrity violation and request summary disposition of such claim.

It is now well established that a person has a constitutional right to privacy, although privacy rights often give way to consideration of public interest and/or properly exercised police power. *See* Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705 (1973); Grisworld v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678 (1965). A claim of privacy rights may be claimed either under the Fourth Amendment (as applied to the states through the Fourteenth Amendment) or under the substantive due process doctrine. *See* Bell v. Wolfish, 441 U.S. 520, 558, 99 S.Ct. 1861 (1979). An individual has a constitutional right to privacy and a claim under Section 1983 which protects the individual interest in avoiding disclosure of personal matters even within the control setting of a penal institution. Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (medical information falls under an inmate's right to privacy). However, regardless that the Fourth Amendment protects against certain kind of government intrusions, it often has nothing to do with privacy. Katz v. United States, 389 U.S. 347, 350, 88 S.Ct. 507 (1967). Yet, an individual interest in avoiding disclosure of personal matters has been recognized as a constitutional right. *See* Whalen v. Roe, 429 U.S. 589, 599, 97 S.Ct. 869 (1977).

As per Whalen, 429 U.S. at 877 n. 23, 97 S.Ct. 869, some personal rights are "implicit in the concept of ordered liberty" and are so "fundamental" that an undefined penumbra may provide them with an independent source of constitutional protection. Some zones of privacy have been created by specific guarantees, while others are dealt generally with

substantive aspects of the Fourteenth Amendment.  Rights to privacy have been also found on a case-by-case basis and implicit notions thereof behind the First, Fourth, Fifth, Ninth and Fourteenth Amendments. Borucki v. Ryan, 827 F.2d 826, 840 (1st Cir. 1987).

It is clear, and a fundamental concept of our American system of justice, that no reasonable law enforcement officer could have thought as permissible to frame somebody for a crime he/she did not commit and actions taken in contravention to this prohibition violates the due process right of the falsely accused. *See* Limone v. Condon, 372 F.3d 39 (1st Cir. 2004).  The deprivation of property without due process of law, whether to liberty or tangible objects, is encompassed within such due process. The mere notice and hearing that can be afforded as to the loss of liberty and/or property is not curative when the grounds for the state action are result of deliberate deception to the court or judge nor as much as when a jury is presented with perjured or false testimony intentionally.  *See* Brown v. Mississippi, 297 U.S. 278, 286, 56 S.Ct. 461 (1936).[2]

It has been held that intentional or reckless fabrication of material inculpatory evidence in support of probable cause for arrest may amount to a Fourth Amendment violation that Section 1983 may redress.  *See*  Burke v. Town of Walpole, 405 F.3d 66 (1st Cir. 2005).

---

[2] "...allegations that [the petitioner's] imprisonment resulted from perjured testimony, knowingly used by the State authorities to obtain his conviction, and from the deliberate suppression by those same authorities of evidence favorable to him ... sufficiently charge a deprivation of rights guaranteed by the Federal Constitution." Pyle v. Kansas, 317 U.S. 213, 216, 63 S.Ct. 177 (1942); *see also* Miller v. Pate, 386 U.S. 1, 7, 87 S.Ct. 785 (1967).

Defendants had previously argued, when requesting judgment on the pleadings, in regards to the privacy claim for having the press and the media present while plaintiffs were escorted under arrest for false charges into the police station was no more than a "perp walk". It was also argued that qualified immunity should have been granted on arguments there was no clear established legal indicia or line of cases that had determined at the time of the events of this case in the absence of a staged arrest for the benefit of media coverage, that plaintiffs' rights could be violated by the exposure of coverage of their detention when being moved from the van to the police station. Such actions by herein defendants would not amount to a privacy violation which was clearly established at the time. Then, we declined to follow defendants' reasoning regarding privacy rights.

Plaintiffs have indicated in the Amended Complaint that they were escorted in the Police van by one of the directly involved co-defendants who had incurred in the acts of fabricating evidence, Agent Raúl Barbosa and the supposedly informer Vargas. Agent Juan Ortíz, another co-defendant, assaulted co-plaintiff David Sepúlveda on the chin when he attempted to bow his head, so as to lift up his head when he came out of the van in front of the media. *Amended Complaint ¶¶19-25.*

Defendants have abundantly discussed Lauro v. Charles, 219 F.3d 202 (2d Cir. 2000) wherein a "perp walk" was involved and qualified immunity raised was allowed.

Jorge M. Vargas et al., v. Pedro Toledo Davila, et al
Civil No. 08-1527 (CVR)
Opinion and Order
Page No. 15

Recognizing <u>Lauro</u>,[3] the Second Circuit in 2003[4] still found that, in the absence of any showing that the particular co-defendant's action of providing to the media defendant's identification, summary judgment on qualified immunity was warranted.

Insofar as the particular case before this court, the right to privacy may well be encompassed within a citizen's right not to be represented publicly as a felon under false accusation before the news media and the community, as one right that may be protected within the Fourteenth Amendment related to ensuring confidentiality of personal matters, not to significant personal decisions as discussed by defendants, such as those within the sphere of marriage, procreation, contraception, family relations, child rearing, and similar.[5] However, the right to privacy is more zealously protected by the Constitution of the Commonwealth of Puerto Rico. Although properly held herein as a Fourteenth Amendment scope, it may also fall within the supplemental claims in Counts XIII and XIV. P.R. Const. Art. II, §§ 1, 7.

In the case before this Court, the complaint identifies some of the defendants who participated in the scheme to fabricate evidence which would support the spoiled probable cause, as also participating in the media coverage of plaintiffs who were finally arranging for the "perk walk" and the media coverage.

---

[3] In <u>Lauro</u> the New York city's practice by 2000 of conducting "perp walks", that is, walking suspects before the press, violated the Fourth Amendment, but the prohibition of perp walks was considered not clearly established at the time of the violation for which qualified immunity was allowed.

[4] <u>Olivera v. Town of Woodbury, New York</u>, 281 F.Supp.2d 674 (S.D.N.Y. 2003).

[5] The right of the press to be provided with records of criminal cases ending in dismissal or nolle prosequi was likewise recognized in <u>Globe Newspaper Co. v. Pokaski</u>, 868 F.2d 497 (1st Cir. 1989) but it also discusses the existence of some cases where defendants may be able to show that their privacy interests outweigh the public's right of access.

Jorge M. Vargas et al., v. Pedro Toledo Davila, et al
Civil No. 08-1527 (CVR)
Opinion and Order
Page No. 16

Co-defendants submit the sworn statement of WORA-TV, Channel 5 Manager, in that when their photographs and/or videos were taken the detained individuals were placed on benches inside the Police Station. *Defts' Exhibit 13.* Plaintiffs on the other hand describe the state police moving them in concerted action from one place to another so as to parade them for media coverage and forcing their heads up to be photographed, even well knowing there was no illegality to their actions and no probable cause,[6] after being in possession of ample information their weapons were legally held.[7] Plaintiffs further aver there was other media coverage and not only the one proposed by defendants, including written media, El Vocero and other TV stations. *Plaintiffs' Exhibit 3, Tetelo Vargas' depo. pp. 108-117, 126-131.*

The reasonableness of an asserted interest in privacy is determined by the totality of the circumstances, which may not be elucidated at this stage of proceedings in the presence of genuine issues of fact in controversy. Neither could the totality of the circumstances be assessed in this action when conscience-shocking exercise of power exercised by law enforcement officers who knowingly fabricated a case exposes improperly charged individuals and regular citizens to media coverage as offenders in violation of their privacy and Fourth Amendment right.

---

[6] Plaintiff Sepúlveda testified at his deposition that he heard one police officer state to the sergeant at the station, prior to the display of seized firearms to the media, that there was a problem since all the firearms were legal. *Plaintiffs' Opposition, Sepúlveda's depo., Exhibit 2, pp. 86-87.*

[7] This is not squarely the situation wherein it can be argued these media information serves the purpose of publicizing the government's efforts in fighting crime and accurate reporting on law enforcement activities, further supporting recognition of the importance of the press and media covering to inform the general public about the administration of justice. Wilson v. Layne, 526 U.S. 603, 612, 119 S.Ct. 1692 (1999) (arguing Fourth Amendment protection when the Police allows reporters to ride-along in the execution of search warrants of a home).

As above summarized, the material facts presented by defendants are being contradicted by plaintiffs' testimonies, thus making the events object of credibility determinations which are not to be assessed at this juncture under summary judgment standards.

**2.    Malicious/False Prosecution as a Federal Constitutional Right (Counts V and VI)**.

Defendants have discussed plaintiffs should avail themselves of a tort claim instead of a constitutional violation because of their claim of false/malicious prosecution or arrest as drafted in Count V of the Amended Complaint.

> 39.  The criminal charges submitted against Plaintiffs, lacked probable cause, were terminated in plaintiffs' favor, and were filed with malice, deliberate indifference and reckless disregard to plaintiffs' constitutional rights. Defendants knowingly and/or intentionally and/or with gross negligence and/or reckless disregard of plaintiffs' rights fabricated and filed false charges against plaintiffs.  Defendants knew that fabricating charges to secure probable cause and justify illegal search, seizure and arrest, clearly violate-d Plaintiffs' constitutional rights.  Defendants incurred in illegal malicious prosecution proscribed by the Fourth and Fourteenth Amendments to the Constitution of the United States, a claim that is cognizable under 42 U.S.C. §1983. *(Amended Complaint, p. 12, Docket No. 38-2).*

Defendants also seek partial summary judgment of Count VI in that plaintiffs, re-alleging paragraphs 1-29, claim:

> 41.  Defendants' intentional and malicious filing of illegal charges against Plaintiffs further infringed Plaintiffs' liberty rights under the Fourth and Fourteenth Amendment rights to the Constitution of the United States as they remained under the government's surveillance until the charges were finally dismissed months after they were filed.   *(Amended Complaint, p. 13, Docket No. 38-2).*

Constitutional tort of malicious prosecution includes the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.  Calero-Colón v. Betancourt-Lebrón, 68 F.3d1 (1st Cir. 1995).  A malicious prosecution claim need not always rest on the right to be free from unreasonable searches and seizures under the Fourth Amendment, since it may also encompass a procedural due process violation.[8]  1 Wayne R. LaFave, Criminal Procedure §2.7(a)-(c) (3d ed. 2007).

Where false statements have been relied on to establish probable cause, the existence of probable cause for purposes of Section 1983 malicious prosecution claim is determined by setting aside the false information.   In addition, unlike a false arrest or false imprisonment claim, a malicious prosecution concerns detention only after the institution of legal process.  Wallace v. Kato, 549 U.S. 384, 127 S.Ct. 1091, 1096 (2007).[9]

It would be a violation of the Fourth Amendment for an arrest warrant affiant to "knowingly, or with reckless disregard for the truth", include false statement in the affidavit".  Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 2676-77 (1978).  It is

---

[8]  In Albright v. Oliver, 510 U.S. 266, 274-75, 114 S.Ct. 807 (1994), the Supreme Court specifically excluded substantive due process as the basis for a malicious prosecution claim and if any civil rights was violated for lack of probable cause it was a Fourth Amendment violation to be free from seizure. See Meehan v. Town of Plymouth, 167 F.3d 85 (1st Cir. 1999) (no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution).

[9]  After the institution of legal process, unlawful detention forms part of the damages for the ... tort of malicious prosecution, which remedies detention accompanied not by absence of legal process but by wrongful institution of legal process.

similarly a Fourth Amendment violation to "knowingly or recklessly omit from the affidavit information which, if included, would have vitiated probable cause." *Id.*  *See* Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092 (1986) (liability of police officer who allegedly applied for arrest warrants, without probable cause, in violation of the Fourth Amendment).

The persons who are unlawfully arrested without legal process can bring a Fourth Amendment claim for false imprisonment. Wallace, 127 S.Ct. At 1095, 1096 n.2.  A malicious prosecution framework in a sense allows a second Fourth Amendment claim to come on the heels of the first one.  *See* Wilkins v. DeReyes, 528 F.3d 790, 799 n.5 (10ᵗʰ Cir. 2008).  A Section 1983 malicious prosecution action based on deprivation of Fourth Amendment rights requires a showing of the absence of probable cause to initiate criminal proceedings against plaintiff.  Meehan v. Town of Plymouth, 167 F.3d 85 (1ˢᵗ Cir. 1999).

A Section 1983 claim for malicious prosecution as a deprivation of procedural due process is barred where the state's tort law recognizes a malicious prosecution cause of action. *See* Roche v. John Hancock Mut. Life Ins.Co., 81 F.3d 249, 256 (1ˢᵗ Cir. 1996); Pérez-Ruiz v. Crespo-Guillén, 25 F.3d 40, 42-43 (1ˢᵗ Cir. 1994). There is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution. Roche, 81 F.3d at 256 (citing Albright).  Thus, it is settled law in this judicial circuit that Section 1983 malicious prosecution claim are not actionable unless there is no adequate post-deprivation remedy available under state law. As such, the Section 1983 malicious prosecution raised by plaintiffs in this case would not fit within the federal claims in Counts V and VI of the Amended Complaint and partial summary judgment is warranted.

Jorge M. Vargas et al., v. Pedro Toledo Davila, et al
Civil No. 08-1527 (CVR)
Opinion and Order
Page No. 20

Still, since plaintiffs have filed pendent state claims, which may be actionable as a state tort under Section 1802, the malicious prosecution claim may well fall under the causes of action in the Amended Complaint set forth in Counts XIII and XIV.

Notwithstanding the above legal discussion, the case at bar has engaged significant and numerous controversies of material facts regarding the violation of federal and state constitutional rights that are not proper to be resolved at the level of summary judgment not only as to the credibility of the facts exposed but also as to whether the arresting officers acted as a reasonable officer would have acted relying on such facts or omissions.  The interest at stake in a malicious prosecution claim is the right to be free from deprivations of liberty interest caused by unjustifiable criminal charges and procedures, while false arrest infringes upon the right to be free from restraints on bodily movement.

Under the factual scenario presented in the complaint, together with the controversies of genuine issues of material facts, summary judgment of either malicious prosecution under state law or false arrest under Section 1983 is not appropriate because there are instances which may well cover both claims, to wit, the restraints on plaintiffs between the initial detention, the searches and seizure of property without probable cause, the restraints on plaintiffs after the initiation of the legal process until all the charges were dismissed and the consequential damages of each phase of the encounters.[10]  Thus, the false arrest claim may prevail as a federal civil rights violation under Section 1983.  Meanwhile,

---

[10]    *Cf*. Ayala-Martínez v. Angleró, 982 F.2d 26 (1st Cir. 1992) (finding on summary judgment malicious prosecution based on fabricated cases  not a federal civil rights violation but a state tort but stemming from a detention that was part of a lawful arrest for driving under the influence).

Jorge M. Vargas et al., v. Pedro Toledo Davila, et al
Civil No. 08-1527 (CVR)
Opinion and Order
Page No. 21

the malicious prosecution claim, although not encompassed as a federal civil rights, may well fit within the supplemental state claims raised by plaintiffs.[11]

In view of the foregoing, since it is clear the malicious prosecution under Section 1983 would not fit within the federal claims in Counts V and VI of the Amended Complaint as above discussed, partial summary judgment is GRANTED.  In turn, partial summary judgment is DENIED as to the false arrest claim (which may prevail as a federal civil rights violation under Section 1983) and as to the state malicious prosecution claim (although not encompassed as a federal civil rights, may well fit within the supplemental state claims raised by plaintiffs) for there being material issues of fact in controversy.

### 3.  Supervisory Liability as to co-defendant Toledo.

Co-defendants also claim there in no *respondeant superior* under Section 1983 and supervisors must be found liable on the basis of his/her own acts or omissions.

A supervisor or the head of the agency, in this case Police Superintendent Toledo, may be found liable under Section 1983 on the basis of his own acts or omissions, but liability may not be predicated upon a theory of *respondeat superior*.  A supervisor may also be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness, and if he had the power and authority to alleviate it.  Plaintiffs must, however, show there is "an 'affirmative link' between the street-level misconduct and the action, or inaction, of supervisory officials."

---

[11]  It will not be for this court to juxtapose at this stage the federal claims for malicious prosecution in Counts V and VI for the supplemental claims in Counts XIII and XIV.  Whether plaintiffs will seek to amend the complaint or submit later to clarification in a verdict form as these malicious prosecution claims being incorporated as Counts XIII and XIV will be addressed when the issue is raised and ripe for adjudication.

Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 561-562 (1st Cir.1989) (*quoting* Rizzo v. Goode, 423 U.S. 362, 371, 96 S.Ct. 598 (1976)).  Plaintiffs can establish a causal link "if there exists a known history of widespread abuse sufficient to alert a supervisor to ongoing violations." *Id.  See* Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 48 (1st Cir. 1999).  Even if a supervisor lacks actual knowledge of censurable conduct, he may be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness, and if he had the power and authority to alleviate it.  Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 582 (1st Cir. 1994).

As to co-defendant Toledo, former Police Superintendent at the time of the events, the statement provided and included by defendants as Exhibit 6, deposition testimony, indicates he did not have any personal knowledge of the events alleged in the amended complaint nor received information or written report about specific improper conduct by any subordinate state agents.   Co-defendant Toledo's averment is that such information would have only been delivered to other divisions within the Puerto Rico Police Department and not to his office nor to him personally for which he should have no liability as to any acts of his subordinates, co-defendants herein, other state police officers.

Plaintiffs' opposition reveals the state agents who participated in the search and seizure of the weapons, co-defendants Ortíz-Pérez and Bayrón-López, indicated also in their depositions a lack of training or information as to the legality of the ammunition or the weapons covered by the hunting licenses held by plaintiffs, which evidently would have established there was no offense present and no probable cause for their arrests.  This lack

of knowledge by state agents had a  direct bearing on the determination of probable cause for the search, as well as it vitiated the probable cause for the arrests and initiation of legal process against plaintiffs.  In addition, there were other plaintiffs, besides Tetelo Vargas and Jorge Vargas, who were also affected by the co-defendants actions, in a total absence of a search warrant for their residence, as would be plaintiffs Sepúlveda and Alicia Vargas, who were also searched, seized and taken by the agents.

Plaintiffs have claimed that during a significant span of time defendant Toledo and supervisors of co-defendants police officers were aware of inappropriate, unprofessional and illegal conduct by the division of illegal weapons in Mayaguez that was so outrageous and rampant as to constitute a pattern and practice as to which no corrective action was timely undertaken or effective supervision or discipline, amounting to gross negligence and/or reckless disregard or deliberate indifference towards the constitutional rights of others.

There are factual disputes, bearing on probable cause determination and the legality of the law enforcement personnel actions, on whether co-defendant Ortíz-Pérez had no knowledge of whether the complaint alleged was written, nor if it was sworn nor who had provided the confidential information as to said complaint that initiated the investigation as to plaintiffs. Co-defendant Ortíz-Pérez denied the judicial fact that there have been several incidents that were brought before the courts regarding state agents of the Mayaguez Illegal Weapons' Division fabricating cases. In addition, Ortíz-Pérez' own deposition testimony indicates that, although there is great similarity between a rifle and

a shotgun, which was one of the four ones that plaintiff was legally authorized to posses according to the Citizens' Registry, at a distance he concluded, without more, it was a rifle. *Deft's & Plaintiffs' Exhibit 1 and A, Ortíz-Pérez' depo., p. 55.*

Ortíz-Pérez did not conduct an investigation on whether plaintiff Tetelo Vargas had a firearm assigned from his work at the Department of Corrections, Ponce Jail, as informed by the confidential source, although knowing he was a correctional officer. *Id., Exhibit 1 and A, p.65.* Upon seizing ammunition of a different caliber from the legally licensed firearms at the time, Agent Ortíz-Pérez also had no knowledge as to the law provisions that would allow an individual with a license to possess ammunition of a different caliber. *Id., p. 77.*

Furthermore, it is undisputed that as to co-plaintiff David Sepúlveda there was no search warrant for the search of his residence but co-defendants Ortíz-Pérez and Bayrón-López participated in said search and took him under custody thereafter. There is a factual controversy on whether the agents conducted adequate investigation of the confidential tipster in regards to Tetelo Vargas, causing the initiation of the intervention with plaintiffs regarding weapons, whether the naked eye description at the site by co-defendant Ortíz-Pérez would have been sufficient, if in good faith, and whether if all the material observations and/or omissions had been included in the sworn statement no criminal prosecutions against plaintiffs would have initiated.

These omissions are linked to a failure to properly train and supervise not only the particular subordinates who intervened with plaintiffs, but also the Mayaguez Region Illegal Weapons Division practice of fabricating cases as to innocent citizens for press/media and

statistical recognition. As such, even as to the indirect participation claim against the supervisor of these co-defendants, co-defendant Toledo's causation is seemly present and dismissal of the claims filed against him is unwarranted.

## 5. Qualified Immunity as to co-defendant Toledo.

Defendants summarily pleaded entitlement to qualified immunity seemly on the basis of the same claim originating from uncontested facts that co-defendant Toledo did not have any personal knowledge of the events, thus denying an affirmative link between the acts of the subordinate state agents who participated in the search and detention affecting plaintiffs and their top supervisor, Police Superintendent Toledo.

In a Section 1983 claim, a defendant-supervisor sued as an indirect violator/infringer would be liable if a responsible official supervises, trains, or hires subordinates with deliberate indifference. Such deficient performance of the supervisory task would have contributed to the civil rights deprivation. The indirect link of co-defendant Toledo with his subordinates would amount to condonation or tacit authorization or deliberate indifference upon which it should be foreseeable the civil rights violations would take place. It would be enough that the supervisor's action or omission to act has created or has overlooked a clear risk of future unlawful action by a lower-echelon over whom he had some degree of control. Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999).

To support qualified immunity, co-defendant Toledo solely has claimed total lack of knowledge of the subordinates' activities, which he stated that in any event were delegated by him to other divisions and/or assistants under his command. The argument raised to

support qualified immunity is minimal and would not suffice.  Plaintiffs have presented uncontested facts precisely from the lower-echelon under co-defendant Toledo that they had no training or knowledge as to weapons' law provisions.[12]

Plaintiffs have furthered this contention with testimony that precisely, under the control and availability of law enforcement, the legality of the possession of hunting weapons and the corresponding licenses could have been easily verified.  Co-defendant Toledo's argument of having no knowledge and that, in any event, such reports or information would not have reached his office goes akin with a presumption that by delegation of supervisory duties, the highest command officer, shielded by his own castle's walls and bridges, would never be found liable for any subordinates' actions. Furthermore, co-defendant Toledo has not presented sufficient qualified immunity arguments to override any of the uncontested facts submitted by plaintiffs nor any other applicable legal contentions that could be applicable to these facts.[13]

Accordingly, qualified immunity is DENIED as to co-defendant Toledo both because of insufficient legal contentions, as well as for the presence of genuine issues of material fact in controversy.

---

[12]   A competent public official is expected ordinarily to "know the law governing his conduct."  Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727 (1982).

[13]   Behrens v. Pellecier, 516 U.S. 299, 306, 116 S.Ct. 834 (1996); Stella v. Kelley, 63 F.3d 71 (1st Cir. 1995) (summary judgment order which determines that the pretrial record sets forth genuine issues of fact, as distinguished from an order that determines whether certain given facts demonstrate, under clearly established law, a violation of some federally protected right, is not reviewable).

Jorge M. Vargas et al., v. Pedro Toledo Davila, et al
Civil No. 08-1527 (CVR)
Opinion and Order
Page No. 27

### 6.  Conspiracy claims (Count XII).

Defendants submit there is but a perfunctory claim of conspiracy as to the defendants which lacks a single fact suggesting an agreement or conspiracy among the appearing defendants and fails to comply with Fed.R.Civ.P. 8(a)(2).  As such, plaintiffs have not pleaded sufficient elements to sustain a claim of conspiracy.

Plaintiffs in their opposition state they are voluntarily dismissing the conspiracy claim for which there is no need to deal further with the issue.  *Docket No. 85, p. 34, at VII.*

Considering the parties' contention, including no factual disputes, it is proper to enter partial summary judgment as to said conspiracy at Count XII.[14]  *(Amended Complaint ¶56, Docket No. 38-2).*

### CONCLUSION

In view of the above defendants' Motion for Partial Summary Judgment *(Docket No. 56)* is **GRANTED IN PART AND DENIED IN PART** as follows:

-       Partial summary judgment is **GRANTED** as to the conspiracy claim, which was voluntarily dismissed;

-       Partial summary judgment is **GRANTED** as to a claim of violation of federal rights for malicious prosecution under Section 1983;

-       Partial summary judgment is **DENIED** as to the false arrest claim (which may prevail as a federal civil rights violation under Section 1983) and as to the state malicious prosecution claim (although not encompassed as a federal

---

[14]   Defendants partial dismissal makes reference to Causes of Action II, V, VI, and XI.  However, the Amended Complaint includes the conspiracy claim in Count XII.

civil rights it may well fit within the supplemental state claims raised by

plaintiffs).

-       Partial summary judgment is **DENIED** as to all remaining claims raised in

the Amended Complaint;

-       Qualified immunity is also **DENIED**.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 17th day of February of 2010.

                              s/CAMILLE L. VELEZ-RIVE
                              CAMILLE L. VELEZ-RIVE
                              UNITED STATES MAGISTRATE JUDGE